229 So.2d 809

June McCARTNEY, a/k/a June McCartney Leggett

v.

Opal McCARTNEY.

I Div. 10.

Court of Civil Appeals of Alabama.

Dec. 22, 1969.

Kenneth Cooper, Bay Minette, for appellant.

Chason, Stone & Chason, Bay Minette, for appellee.

THAGARD, Presiding Judge.

Appellant gave birth, out of wedlock, on March 19, 1967, to Wendy Lynn McCartney. On May 25, 1967, the custody of said child was awarded to Opal McCartney, the appellant's stepmother. In June, 1967, appellant married T. K. Leg-

gett, Jr., and they resided near Camp Lejeune, North Carolina, where her husband was stationed in the Marine Corps.

Appellant, on December 11, 1967, filed a petition for modification of decree of custody of Wendy Lynn McCartney in the Circuit Court of Baldwin County, asking that the prior decree of said court, dated May 25, 1967, be modified so as to return said child to her.

Upon hearing the evidence, taken ore tenus, the trial judge denied appellant's request for modification of the custody decree.

Appellant then filed a motion for a new trial which motion was denied by the court.

This appeal is taken from the judgment and the overruling of appellant's motion for a new trial.

The appellant states in her brief that there was no showing by the appellee of the appellant's unfitness to have custody of Wendy Lynn McCartney, her natural child; and without such showing she should have had her child returned to her.

As authority for this contention the appellant cites Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910, 917, in which the Supreme Court stated, viz:

> "And as was said in our case of Esco v. Davidson, 238 Ala. 653, 655, 193 So. 308, 309:
>
> " ' "The unfitness which deprives the parent of the right of the custody of a child must be positive, and not merely comparative or speculative, and must be shown by clear and satisfactory proof, the burden of proof being on the person contesting the parent's right to the custody. * * *" ' "

The appellant's argument is based solely on the lack of showing of her unfitness by evidence presented at the hearing on her petition for modification of the custody decree. There is no contention by appellant

that the decree of May 25, 1967, was erroneous because of a lack of evidence presented by appellee that the natural parent (appellant) was unfit. The appellant did not appeal from that decree, but later filed a petition to modify the decree based on a change in circumstances, namely, her marriage to Sergeant Leggett.

■ We do not think that it was the duty of the appellee to introduce proof of the appellant's unfitness. Undoubtedly, the trial court rendered its decree of May 25, 1967, based on evidence introduced as to the appellant's unfitness.

In Carter v. Harbin, 279 Ala. 237, 184 So.2d 145, 147, the court affirmed the decree of the trial court denying a petition to modify a custody decree filed by divorced wife who remarried and stated as follows:

"Where a court is confronted with the conflicting claims of parents or others for custody of infants, the fundamental controlling inquiry is the best interest of the child.

"In a proceeding of this kind where the matter of custody has already been determined by a court of competent jurisdiction, with all interested parties before the court, a change of custody may be accomplished only by modification of the former decree.

"The former decree fixing custody of a minor is conclusive of the interest of the child and of the rights of the parents, so long as the status at the time of the decree remains without material change or unless pertinent facts existing, but not disclosed, at the time of the previous decree are brought to light.

"A prior decree of custody is attended by all reasonable presumption, and the burden of showing such changed conditions or other substantial reason for its modification rests upon the party seeking a change of custody.

"The foregoing principles are firmly established by the decisions of this court.

Anonymous v. Anonymous, 277 Ala. 634, 173 So.2d 797; Messick v. Messick, 261 Ala. 142, 73 So.2d 547."

In Carter v. Harbin, supra, the court also stated:

"We have said that where evidence in a child custody case was heard orally before the trial court, as it was in this case, the trial court's findings as to the facts will not be disturbed on appeal unless plainly erroneous or palpably and manifestly wrong. Long v. O'Mary, 270 Ala. 99, 116 So.2d 563; Wilkes v. Wilkes, 270 Ala. 341, 118 So.2d 906. * * *"

■ In the case at bar, we have not overlooked the holding in Griggs v. Barnes, supra, which stated that the parents of a child have a superior claim as against the world to the child's custody if they are fit and proper. We are not deciding as to the fitness of the appellant in this case, but rather whether or not the appellant's marriage constitutes such a change in conditions as will warrant modification.

From reading the testimony presented in the transcript we are sure that the appellant-mother is a fit and proper person, but as was stated in Carter v. Harbin, supra:

"We agree with the trial court's conclusion to the effect that the mere fact that the mother has reformed, is now married to a fine man who is able to care for her and her children, does not warrant a decree of modification. * * *"

■ Our major concern is determining what is in the best interest of the child. The court stated in Kewish v. Brothers, 279 Ala. 86, 181 So.2d 900, 902, as follows:

"In Parks v. Parks, 275 Ala. 613, 157 So.2d 212, we * * * said that 'ties of affection springing from years of association of a child with its custodian, particularly if the custodian be a relative, cannot but be given regard in determining the welfare of the child.' "

■ Wendy Lynn McCartney has resided with her maternal grandparents the majority of her young life, and she no doubt considers them as her only parents. The effect of awarding custody of the child to the appellant would be to take her from an environment in which she is happy and subject her to the continual moving from base to base which military personnel must contend with. Wendy Lynn McCartney is a deeply loved child by both of the grandparents. They provided her with a good home and a stable environment in which to grow. They are able to adequately provide for all of the child's needs. Also, to leave the child in appellee's custody would eliminate any possibility, however remote, of partiality being shown by the appellant's husband to his natural child.

Therefore, we think it is in the best interest of Wendy Lynn McCartney that she remain in the custody of the appellee. To do otherwise, we feel, would be gambling with the child's best interest.

■ The appellant in her brief argues one other point that we feel we should not ignore.

In her amended petition for modification of the decree rendered on May 25, 1967, awarding the custody of the child to her step-grandmother, petition alleged in part as follows:

"That when Your Honor awarded the care, custody and control of Wendy Lynn McCartney to the Complainant in this cause, Opal McCartney, on 25 May 1967, your Petitioner herein was taken from the Fairhope, Alabama, jail, where she had been imprisoned the night before by City Marshall (sic) James Horne, of Daphne, Alabama, and Deputy Sheriff Roy Randall, and brought to the Baldwin County Courthouse, and after Opal McCartney, your Petitioner's step-mother arrived was taken to the law office of Hon. John Chason, who drew the papers which were presented to this Honorable Court at that time; that Mr. James Horne accompanied your Petitioner to Mr. Chason's office, and then came to the Courthouse with Opal McCartney, Mr. Chason and your Petitioner; that after the hearing in your Honor's Office Mr. James Horne returned Your Petitioner to the Daphne City Jail, where late that afternoon the City Recorder of Daphne, Alabama, found your Petitioner not guilty of the charge which had been filed against her; that on the way to Bay Minette, Alabama, on 25 May 1967, your Petitioner inquired of Mr. James Horne what did he think the Court would do with her baby if your Petitioner did not consent for the Court to take it, to which he replied he did not know, but that probably they would place it in a foster-home; that because of the foregoing circumstances, your Petitioner was afraid to try to retain custody of her aforementioned child on 25 May, 1967, and she was, by the action of the officers, prevented from obtaining legal counsel to represent her before this Honorable Court on 25 May, 1967."

From the transcript we note that during the direct examination of appellant June McCartney, the following occurred:

"Q. On the 25th day of May when you all had the hearing before this Court what were the conditions under which you were brought to Court to have that hearing?

"MR. CHASON: I object.

"THE COURT: I don't want to hear that—if you start on what was in the petition; she is sworn to tell the truth, and I don't see what that has to do with it; I heard the case and I thought it was to the best interest of the child to give it to the grand parents. If she starts lying she is going to torpedo any chance she has of getting the baby —if she hasn't changed I wouldn't consider giving it to her.

"MR. COOPER: I realize—

"THE COURT: I am not trying to intimidate her but you had things in

that petition that didn't happen and if she testifies to that she is fixing to torpedo any chance she has of getting the baby. But go ahead, this is equity, and I am not sustaining any objections. I want you to tell the truth, Young Lady and I want you to be sure that you do.

"MR. COOPER: How far will you permit me to go?

"THE COURT: As far as you want to go.

"MR. CHASON: It will make it a lot longer if he goes back of the decree, as I will have to go into the fact that she was sleeping with this boy—"

We think the quoted remarks of the trial court did show bias, prejudice, and perhaps prejudgment on its part. If these remarks did not intimidate the witness, they did intimidate her attorney, for he abandoned that line of examination and made no further attempt to prove the above quoted allegations in the amended petition. We think the trial court should have heard her out on the circumstances that led to her waiver and answer on the original hearing. Obviously, he lost his cool. But since we agree with his conclusion in both decrees as to the welfare of the child we do not reverse the decree in this case:

Affirmed.